JOHN C. DIGIOVANNA
PO BOX 639 (mailing address)
St. James, New York 11780
631 979 1960
Attorney for Plaintiff Vincent Nasso

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

===================================================X

**VINCENT NASSO**                                    INDEX 2:11-cv-03480-JFB-ETB

                                                      **AFFIRMATION IN OPPOSITION**

                  **Plaintiff**

                     **-against-**

**BIO REFERENCE LABORATORIES, INC.**

                  **Defendant**

===================================================X

      **JOHN C. DIGIOVANNA,** an attorney at law, duly admitted to practice in the courts of the State of New York, affirms under penalty of perjury as follows:

      This affirmation is submitted in opposition to defendant's motion for an Order dismissing Plaintiff's amended complaint on the grounds that Plaintiff' claims are barred by the statute of Limitations.

      Defense Counsel argues that Plaintiff's claims are barred by the 6 year statute of Limitations based on the erroneous assumption that Plaintiff's cause of action began to "accrue" in 2002 when plaintiff stopped receiving commissions from Defendant. Defense

Counsel also argues that Plaintiff's claim is not "plausible" and that therefore plaintiff could not be permitted to invoke the "equitable estoppel doctrine". Plaintiff does not disagree that the 6 year statute of limitations applies from the date the Court finds the causes of action to have accrued herein.

It is respectfully submitted that defense counsel in making such assertions chose to do so before having a clear understanding of the facts of this case or the relationship that Nasso had with the Principal Owner of the defendant, Marc Grodman. Indeed, it is respectfully submitted that this motion is premature because there has been no discovery or depositions taken of any party herein and that this motion was made to hide the huge amounts of money that defendant has benefitted from the accounts brought in by Plaintiff.

### PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

As set forth in the accompanying affidavit of Vincent Nasso, he was a man, who, in 1989 had a medical degree and was a part owner in a company called Bi Wise Pharmacy located in Brooklyn and was also an owner of a company called Bio Dynamics. In about 1989, Nasso and his partners sold Bio Dynamics and its accounts to Bio Reference. Basically, Bio Reference processed blood work that was referred to it by physicians and others in the medical field. Bio Dynamics was in a similar field but Bio Reference had more sophisticated testing facilities. In any event and as set forth in the amended complaint, Nasso , entered into an oral agreement whereby in consideration of his sale of Bio Dynamics was to receive a salary as well as 10% commissions on all accounts brought in to Bio Reference including Bio Dynamic accounts and would continue to be paid those commissions so long as they remained with Bio Reference. He was also paid 40,000 shares (out of 400,000 paid to the other owners of Bio Dynamics) of Bio

Reference stock and Nasso was also to allow Bio Reference to use Bi Wise Pharmacy as a collection station for Bio Reference at the expense of Bi Wise. In addition Nasso agreed to sign and did sign a non compete clause.

Therefore, from 1989 up to 2002 while Nasso was employed by Bio Refence, he maintained his part ownership in Bi Wise and then, in 1997 opened a business called VIP which was a pharmacy mail order business. In 2000 ,M r Nasso became a partner of Joel Grodman, Marc Grodman's brother, in a company called GPP/VIP which managed pharmacy management benefit programs. Nasso maintained all of these businesses while also being employed by Bio Reference. He used his connections from operating these businesses to gain accounts such as the New York Hotel Trade Council.

As set forth in his accompanying affidavit, he formed a close personal relationship with Bio Reference Primary Owner, Marc Grodman.

In 2001, he sought the advice of Marc Grodman when he received a subpoena for the records of GPP/VIP and VIP. In fact, Nasso consulted with Marc Grodman and it was The Bio Reference Attorney, Roger Tolan who was referred to Nasso by Marc Grodman that obtained the services of Michael Shaw to represent him in connection with the subpoenas. Both Marc Grodman and Roger Tolan, the attorney for Bio Reference remained close advisors to Vincent even after Vincent Nasso was indicted in or about June, 2002 and was represented by Attorney Barry Levin. In fact, Marc Grodman agreed to be a character reference witness for Nasso in the event Nasso chose to go to trial on the criminal indictment.

In June 2002, Nasso was indicted and at that time It was not only Marc Grodman that told Vincent Nasso that it would be harmful to Bio Reference to maintain an employment or

any kind of business relationship with Nasso after he was indicted. It was also attorney Roger Tolan who Vincent relied on to guide him through the criminal investigation he was going through.  Both Marc Grodman and Roger Tolan, Attorney told Nasso that because Bio Reference was a public company his ( Nasso's) continued relationship to that company as of record would be harmful to it. It was Roger Tolan who advised Vincent Nasso to sell his stock ( the 40,000 shares paid to Nasso as part of the sale of Bio Dynamics)  in Bio Reference for a small amount of money. Both Marc Grodman and Attorney Roger Tolan  represented to plaintiff again at the time of his indictment in  June, 2002 that  Bio Reference would  continue to pay Nasso 10% commissions on all accounts that he had  brought in to Bio reference ( during the time he was employed by Bio Reference) as long as those account generated money to Bio Reference but that Nasso would have to wait until all criminal proceedings against him were **completely resolved** and he was out of prison. This was reiterated to Plaintiff by Marc Grodman and Roger Tolan  when he was incarcerated in April, 2004 and was told at that time that he would receive his commissions upon his release from prison.

    Plaintiff initially understood that  his criminal case was resolved when he was released from prison in 2006 after completing about 2 years.  Upon his release, Plaintiff called Marc Grodman's office and left messages that he would like to know how much he is owed on commissions as well as to the status of the accounts he had brought in.  There was no response. Although there was no question in Plaintiff's mind that Defendant agreed to pay Plaintiff his commissions upon release from prison, plaintiff thought that it was possible that Marc Grodman believed that Nasso's case was not completely resolved until probation was

completed even though Marc Grodman and Roger Tolan told Plaintiff he would be paid when he was released from prison. Plaintiff completed probation in January,2008.

He again made inquiry and requested that Marc Grodman pay his commissions upon his release from probation in January,2006. Again, there was no response.At that time, he had no idea what commissions were due him. Thereafter, Vincent Nasso sought to determine what accounts Bio Reference was servicing since his indictment. He was able to verify that the largest account he had generated and referred to Bio Reference, The New York Hotel Trade Council, had continuously provided business to Bio Reference since Mr Nasso's indictment and separation from Bio Reference and continues to pay Bio Reference at least up to the time this law suit was commenced. In addition Plaintiff was further able to verify with Fidelity Investments that he is still listed as an employee by Bio Reference with Fidelity 401K plan, a retirement account set up in connection with his employment by Bio Reference. In October, 2008, Plaintiff's wife was seriously injured in a home accident which further prevented plaintiff from taking the time to pursue Bio Reference for his rightful commissions due him. Mr Nasso also states in his accompanying affidavit that he was never discharged as an employee by Bio Reference but only suspended with the understanding that his commissions would be held by Bio Reference and paid to him upon his release from prison and that he would continue to be paid commissions on all accounts he had generated for Bio Reference while an active employee until his indictment in June, 2002.

**FIRST ARGUMENT**

**THE STATUTE OF LIMITATIONS IS NOT A DEFENSE**

**FOR COMMISIONS EARNED BY NASSO FOR ANY**

**PAYMENTS RECEIVED BY BIO REFERENCE BY ACCOUNTS**

**GENERATED BY NASSO PRIOR TO JUNE 2002 FOR PAYMENTS**

**MADE FOR A PERIOD OF 6 YEARS PRIOR TO APRIL 11,2011**

It is respectfully submitted that where a contract provides for a continuing performance over a period of time, each breach begins the running of the statute of Limitations anew, such that accrual occurs continually, and plaintiff may assert claims for damages up to six years prior to the filing of the suit. Indeed, it has been held that in an action to compel an accounting pursuant to a contract whereby the Plaintiff made sales and was entitled to commissions was not time barred where there was a running account and the last transaction took place within six years. See **RUBIN V DAIRYMAN'S LEAGUE COOPERATIVE,259 A.D. 23,18 N.Y.S. 2ND 466.** Furthermore, it has been held that under a contract for a sale of a business in which the buyer was required to pay off debts totaling $42,243.29 owed by the business to certain creditors by paying a minimum of $10,400 a year, a beach occurred each year in which the buyer failed to make the minimum payment. **See Orville v newski,155 A.D. 2ND 799, 547N.Y.S.2nd 913. See also STALIS V SUGAR CREEK STORES, 295 A.D.2nd 939, 744 N.Y.S.2nd 586.**

In the case at bar, it is alleged by Plaintiff that defendant agreed to pay him commissions on all payments made to it from accounts generated by plaintiff during his employment with defendant up to 2002 so long as said account was making payments to defendant. Thus each time an account such as the New York Hotel Trace Council makes a payment to defendant each payment Defendant receives begins the running of the Statute of

Limitations anew. The same is true as to all other accounts Plaintiff generated for the benefit of defendant.

Defendant has of this date failed to reveal the amounts of payment and when payments were made to it by accounts generated by Plaintiff and assert this motion to dismiss to circumvent Plaintiff from obtaining such information through discovery.  Thus Nasso's cause of action did not begin to accrue in 2002 but accrues anew each time defendant receives a payment from an account generated by Plaintiff. Without discovery, Plaintiff cannot obtain this information as defendant refuses to reveal same to date though demand has been made.

## **SECOND ARGUMENT**

**IN THE EVENT THE COURT DOES NOT DENY**

**DEFENDANT'S MOTION BASED ON THE FIRST ARGUMENT**

**PLAINTIFF ASSERTS EQUITABLE ESTOPPEL**

The amended complaint alleges in substance that  (1) in 1989 defendant in consideration of sale of Bio Dynamics, its accounts, and other consideration set forth above, defendant agreed to pay plaintiff 10 % commissions on all accounts generated by plaintiff so long  as those accounts continued to pay defendant for services defendant provided to them.(2) After plaintiff was indicted in 2002  (which was in  June, 2002) but without setting forth exactly when, defendant and plaintiff agreed that defendant would hold plaintiff's commissions  until such time as Plaintiff's criminal proceeding was completely resolved at which time plaintiff would be paid those commissions on accounts he generated while employed by defendant and

would continue to receive commissions on those accounts so long as those accounts continued to pay defendant. The representations were made to plaintiff in June 2002 (when he was indicted) and reiterated again before plaintiff went to prison in April 2004.

Plaintiff states that he agreed to those terms because both Marc Grodman and Roger Tolan, defendant's attorney and counsel told plaintiff that because defendant was a Public Company it would be harmful to maintain plaintiff as an employee while under criminal indictment.    Keeping in mind that Plaintiff states that Marc Grodman provided to plaintiff the services of his corporate counsel, Roger Tolan, and that Tolan gave advice to plaintiff as to which attorney plaintiff should retain when the criminal process first started with the service of subpoenas upon Plaintiff, it is submitted that Plaintiff's reliance upon the representations made to him by an attorney, Roger Tolan, that it would be harmful for a public company to pay him commissions while a criminal indictment was pending, was reasonable.  Both Marc Grodman and Roger Tolan had gained plaintiff's trust and confidence to the point that upon the advice of Roger Tolan, Plaintiff sold his 40,000 shares of stock in Bio Reference following his indictment.

It was further reasonable to believe, that following plaintiff's request for payment following his release from prison in January, 2006, that Marc Grodman's refusal to respond to plaintiff's request for payment was based on Nasso's good faith belief that even though it was clear payment was due following plaintiff's release from prison, Grodman may not have responded because Vincent believed that he (Grodman) was under the mistaken belief that payment was not due until Plaintiff was released from probation ( which took place in Jan, 2006)  when Nasso's criminal case was "completely resolved".It is respectfully submitted that it was Grodman's lack of response which would reasonably lead plaintiff to such a conclusion.

Thus, it is respectfully submitted that if the Court rejects Plaintiff's First Argument , then the court should rule that the statute of limitations should begin to run against plaintiff in January, 2008(as plaintiff brought action in April,2011 well within the 6 year statute) but certainly no earlier than January, 2006, the date that defendant could first be expected by plaintiff to comply with the terms of the agreement entered into between the parties. Under the terms of the agreement between the parties plaintiff could not be expected to know or even have a hint that defendant was reneging on their agreement to pay until his release from prison.

In any event it is respectfully submitted that defendant's argument that the statute of Limitation accrues in 2002 should be rejected by the court.

It is well settled that equitable estoppel will apply "where plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action". **See General stencils v Chiappa, 18N.Y.2nd 125,272 N.Y.. 2nd 337.** Plaintiff reasonably relied on the representations made to him that he would be paid commissions when released from prison and had no reason to believe that either Marc Grodman or Roger Tolan were trying to deceive him especially in view of all the assistance and indeed legal advice they gave him. Nasso relied on the advice of Roger Tolan attorney to sell his Bio reference stock and indeed a fiduciary relationship existed with plaintiff and Marc Grodman and especially Roger Tolan who was an attorney and ,in effect, representations were made to Nasso by Tolan and Grodman that Bio reference would hold Nasso's money for him until he is released from prison and continue to pay him on accounts that Nasso generated. In other words, representatives of defendant agreed to hold his

commissions in trust until Nasso was released from prison, thereby creating a fiduciary relationship between Nasso and Defendant through its agents.

In view of the Fiduciary relationship between Plaintiff and defendant's representative Marc Grodman and Roger Tolan, equitable estoppel should apply from 2002 onward as defendants have concealed all of the money that have been generated to them from accounts generated by Nasso prior to his suspension from employment in 2002.Thus,the statute of limitations should not apply to any payment received by defendant from any account up the present time.

It has been held that "Where concealment without misrepresentation is claimed to have prevented plaintiff from commencing a timely action, Plaintiff must demonstrate a fiduciary relationship –which gave the defendant an obligation to inform him (plaintiff) of facts underlying the claim. **See Gleason v Spota,194 A.D.2nd 764 (2nd Dept, 1993).**

Lastly, the amended complaint was electronically filed with this Court and a verified Amended complaint has been served on defendant's attorneys.

WHEREFORE, it is respectfully requested that defendant's motion be denied and for such other further and different relief as to this Court may deem just and proper.

Dated: St James, NY

Oct 26,2011

_____

JOHN C. DIGIOVANNA

**CERTIFICATION OF SERVICE**

**JOHN C. DIGIOVANNA** of full age certifies as follows:

1. I am sole practitioner licensed to practice law in the state of New York, counsel for Plaintiff Vincent Nasso, Plaintiff, in the above captioned action.

2. On Nov   ,2011, I caused a true and correct copy of the Affirmation in Opposition of John C DiGiovanna and Affidavit in Opposition of Vincent Nasso under Fed R. CivP.12(b)(6) with proposed Order to be served via Federal mail upon

    a. Littler Mendelson PC, attorney fo Defendant Bio Reference at One Newark Center, Newark, N.J. 07102


3 On November    , I caused a true and correct courtesy  copy of of the affirmation in Opposition of John C DiGiovanna and the Affidavit in Opposition of incent Nasso under Fed R. Civ P. 12(b)(6) with proposed Order to be served via Federal Express upon

The Honorable Joseph F Bianco, U.S.D.J., United States District Court for the Eastern District of New York, 100 federal Plaza, courtroom 920, Central Islip, New York 11722

3. I certify under penalty of perjury that the foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

    JDate:Nov   , 2011                    By S/John C DiGiovanna

    _____

    JOHN C. DIGIOVANNA

JOHN C. DIGIOVANNA

P.O. Box 639 (mailing address)

20 Pondview

St James, New York 11780

Aatorney for Plaintiff Vincent Nasso

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

================================================X

VINCENT NASSO                                              index No:2:11-cv-03480-JFB-ETB

                                                           AFFIDAVIT IN OPPOSITION

        Plaintiff

      -against-

BIO REFERENCE LABORATORIES INC

        Defendant

================================================X

State of New York     )

      ) s.s.:

County of Nassau     )

  VINCENT NASSO, being duly sworn, deposes and says:

  I am the Plaintiff in the within action and submit this affidavit in opposition to defendant's Motion to dismiss based onn the lleged defense of Statute of Limitations.

The events leading up to this action began in 1989. At that time I was a part owner of a company called Bio Dynamics which processed blood work sent to it by medical providers and others.  I was also a part owner of a drug store in Brooklyn, Bi Wise Pharmacy and had extensive experience in the pharmaceutical business.  I also possessed a medical degree from Ross University.

In 1989 I  (together with other co owners of Bio Dynamics) entered into an oral agreement with Marc Grodman, the principal owner of Bio Reference to sell to Bio reference all ownership in Bio Dynamics together with all existing Bio Dynamics accounts and to become a salesperson  for bio Reference for salary and 10 percent commission on all accounts I generated for Bio reference with the understanding that I would continue to be paid commissions of 10 percent so long as any account I brought in continued to generate revenue for Bio Reference. Also, part and parcel of the agreement was that I would be issued 40,000 of 400,000 shares of Bio Reference stock (the balance of stock going to other Bio Dynamics owners) and that Bi Wise Pharmacy  (which I continued to maintain part ownership of ) would serve as a collection station to Bio Reference and Bi Wise would be responsible for paying the phlebotomis and pay other expenses in connection with the operation of the Collection station. In addition, a 401 K retirement plan was set up for me through Bio Reference with Fidelity Investments.

While employed by Bio Refence Laboratories, I also was a part owner in VIP, a pharmacy mail order business which was opened in 1997 and was further involved as part owner with the brother of Marc Grodman, Joel Grodman in a business called GPP/VIP which managed Pharmacy management benefit programs. As a result and through the years I formed a close personal relationship with Marc Grodman and his brother Joel.

Sometime in 2001, I received a subpoena from the federal Government pursuant to a Criminal investigation requiring me to produce records of GPP/VIP and VIP. Because of my relationship with the Grodmans, I turned to Marc Grodman for advice as to what if anything I should do about legal representation in this criminal investigation. He made available to me the servives of his attorney, Roger Tolan, an attorney who also represented Bio Reference and was counsel to them to give me advice in this situation. Mr Tolan recommended that I utilize the services of Attorney Michael Shaw regarding the subpoena that I received. Mr Tolan assisted Mr Shaw in representing me. However, in June of 2002,  was indicted criminally and chose attorney Barry Levin to represent me in that criminal proceeding.

Within a short time after my indictment, both Marc Grodman and Roger Tolan approached me and told me that my employment with them had to be suspended because Bio Reference was a public Company and it would be harmful for Bio Reference to keep me on the books as an employee. They assured me that although they would have  to suspend Payment of commissions presently, ( because it would be harmful for a Public Company to publicly maintain a relationship with a person under criminal indictment) they would keep my commissions for me until the criminal proceeding was completely resolved. At that point  (when the criminal proceeding was completely resolved), I would receive all back commissions due me from accounts I had generated for Bio Reference and would continue to be paid commissions so long as the accounts I brought in continued to generate revenue.

While the criminal proceeding continued, both Marc Grodman and Roger Tolan continued to provide me with emotional support and Roger Tolan made himself available to me for any questions I may have had regarding my case. Roger Tolan also advised me to sell the 40,000 shares of Bio Reference stock that I owned. I did so for a small sum of money upon his advice. Marc Grodman also offered to testify on my behalf as a character witness in the event of a trial. I can honestly say that at the time I thought both Marc rodman and Roger Tolan were acting in my best interest and I wanted to cooperate in any was that I could so as to avoid any embarrassment to Grodman or Bio Reference.

Eventually I plead guilty and was incarcerated in April, 2004. At that time both Roger Tolan and Marc Grodman reiterated what had been said when I was first indicted except that both clearly stated that I would receive all back commissions when I was released from prison and would continue to receive commissions so long as accounts I generated during my active employ provided revenue. I did not object to the arrangement as I expected to be incarcerated for only 2 years and they Grodman and Tolan) had been so supportive of me both emotionally and legally up to that time. I felt very comfortable in allowing Bio reference to hold my commissions until such time as requested by Marc Grodman and Roger Tolan.

Soon after my release from prison in January, 2006 I called the offices of bio Reference and requested to speak to Marc Grodman. When told he was unavailable, I asked that he be informed that I was calling about commissions due me from 2002 and the status of accounts I had procured for bio Reference. I also asked to speak to Roger Tolan about the same matter.

I repeated these calls on several more occasions thereafter and none of my calls were returned by either Roger Tolan or Marc Grodman. After about a month, it became obvious that both men were avoiding me. I could only assume and did assume that the reason I was not being responded to was because they (Grodman and Tolan) did not believe my criminal case was "completely resolved" as was required in the Nov, 2004 agreement. I was still on probation and would remain so until January,2008.

In January, 2008, I again called Grodman and Tolan at Bio Reference and again was told that neither was available to speak with me. I left messages requesting that either man call me back regarding commissions due me as well as requesting the status of all ongoing accounts that I had referred to Bio Reference up to 2002. This was repeated on several occasions with no call back from either man. I had no idea how many of the accounts I provided to Bio reference still remained nor was I aware as to how much income my accounts had benefitted Bio Reference,

Before commencing any action, I investigated to determine which of my accounts still remained with Bio Reference and learned through a friend and attorney at New York Hotel Trade Council ( an account that I brought in to Bio Reference before 2002) that they were still utilizing the services of Bio Reference and have been continuing to make continuous large payments to Bio reference since before 2002 and up to the present time.

I further learned that Bio Reference still had me listed as an employee on my Fidelity 401K retirement account provided to me through Bio Reference.

I was never in receipt of a discharge of employment letter from Bio Reference. It was understood as set forth above that the first time I would be entitled to any back commissions due me was January, 2006 but that I also understood that Bio Reference wanted to wait until my criminal proceeding was completely resolved which was when I completed probation in anuary,2008.

WHEREFORE, it is respectfully requested that defendant's motion be denied.

_____

VINCENT NASSO

Sworn To Before Me This

Day of November,2011

**JOHN C. DIGIOVANNA**

20 Pondview

P.O. 639 (mailing address)

St. James, ew York 11780

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

==================================================X

VINCENT NASSO                                                                       index #: 2:11-cv-03480-JFB-ETB

                          Plaintiff

      -against-                                                                     **ORDER**

BIO REFERENCE LABORATORIES, INC

                         Defendant

==================================================X

        **THIS MATTER having been opened to the Court by Littler Mendelson, P.C.** (Ivan R. Novich, Esq.appearing attorneys for defendant Bio Reference Laboratories, Inc., on Notice to ohn C DiGiovanna,Esq., Attorney for Plaintiff Vincent Nasso, and John C. DiGiovanna, Esq. having submitted an affirmation in Opposition and Plaintiff Vincent Nasso, having submitted an affidavit in opposition and good cause having been shown, it is on this 16th day of December, 2011 **ORDERED** as follows:

1. Defendant's application to dismiss the amended complaint is denied.

2. The Clerk of the Court shall enter Judgement in this matter in favor of the Plaintiff, Vincent Nasso.

_____

Hon Joseph . Bianco,U.S.D.J.