UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Nº 11-CV-3480 (JFB)(ETB)

---

VINCENT NASSO,

Plaintiff,

VERSUS

BIO REFERENCE LABORATORIES, INC.,

Defendant.

---

**MEMORANDUM AND ORDER**
September 24, 2012

---

JOSEPH F. BIANCO, District Judge:

Vincent Nasso ("Nasso" or "plaintiff") filed this action against Bio Reference Laboratories, Inc. ("Bio Reference" or "defendant") alleging that his former employer, Bio Reference, owes him unpaid commissions on sales accounts that he generated while he was employed at Bio Reference from 1989 to 2002. Specifically, plaintiff alleges that he and defendant had an agreement that plaintiff would continue to receive 10% of all revenues generated from any accounts plaintiff referred to defendant, as well as from accounts generated from accounts originally referred to defendant by plaintiff, for "as long as those accounts and referred accounts continued to pay defendant." (Amended Complaint at ¶ 13.) In 2002, plaintiff was indicted on federal charges, and alleges that the principal officer at Bio Reference told plaintiff that Bio Reference could no longer pay plaintiff commissions "until [p]laintiff's criminal case was completely resolved," but that Bio Reference would pay plaintiff all accrued commissions after the criminal process ended. (*Id.* ¶ 17.) Defendant ceased paying plaintiff commissions in 2002. Plaintiff brings three causes of action against Bio Reference: (1) an accounting, (2) breach of contract, and (3) conversion.

Defendant moves to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) the oral contract is incapable of being performed within one year and is therefore barred by the Statute of Frauds, (2) New York law

does not permit post-termination claims that are unlimited and indefinite in nature, (3) Nasso's claims are barred by the statutes of limitations, and (4) Nasso cannot plausibly argue equitable estoppel.

As discussed below, the motion to dismiss is granted in its entirety. Plaintiff's claim for breach of contract is barred by the Statute of Frauds, and no defense or exception to the Statute of Frauds applies. Plaintiff's claim for an accounting is barred because plaintiff and defendant were not in a fiduciary or confidential relationship. Plaintiff's claim for conversion is dismissed as it merely recasts plaintiff's breach of contract claim, and is barred by the statute of limitations.

## I. Background

The following facts are taken from the Amended Complaint filed on August 25, 2011, ECF No. 9 ("AC"), and are not findings of fact by the Court. Instead, the Court will assume the facts in the complaint to be true and, for purposes of the pending 12(b)(6) motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

In 1987, Nasso was an officer and shareholder of Bio Dynamics, a New York corporation that provided "blood laboratory work up" and "medical diagnostic results" for medical facilities and others. (AC ¶¶ 4-5, 8.) In 1989, Bio Reference purchased Bio Dynamics, including all of Bio Dynamics' accounts. (*Id.* ¶ 10.) In consideration for the sale of Bio Dynamics, defendant agreed to pay Nasso in Bio Reference stock and stock options, and agreed to hire and employ Nasso as a sales person and consultant for the purpose of soliciting and referring medical facilities and others who required diagnostic testing results. (*Id.* ¶ 12.) At the time, Bio Reference and Nasso agreed that Nasso would receive "10% of all monies defendant earned from accounts [p]laintiff referred to defendant as well as from accounts generated or referred to defendant from accounts originally referred to defendant by plaintiff." (*Id.* ¶ 13.) It was further agreed "that plaintiff would receive said 10% of said monies earned by defendant as long as those accounts and referred accounts continued to pay defendant for the services defendant provided to them." (*Id.*)

Between 1989 and 2002, plaintiff obtained and referred numerous accounts to defendant, and accounts originally referred to defendant by plaintiff then referred other accounts to defendant. (*Id.* ¶¶ 14-15.) In 2002, plaintiff was indicted for violating certain federal laws, and was charged with federal crimes. (*Id.* ¶ 16.) The indictment and charges "compelled plaintiff to leave his employment with defendant." (*Id.*)

The Principal Officer of Bio Reference, Dr. Mark Grudman ("Grudman"), allegedly told plaintiff that, because plaintiff was under federal indictment, and Bio Reference was a publicly held company, defendant could no longer pay plaintiff his earned commissions until plaintiff's "criminal case was completely resolved." (*Id.* ¶ 17.) Grudman allegedly stated, however, that "all monies and commissions" that plaintiff was entitled to "would be held by defendant for plaintiff's benefit until such time as [p]laintiff's criminal case was completely resolved and when plaintiff was released from prison." (*Id.*) Upon plaintiff's release, Grudman would pay plaintiff the commissions "he was entitled to while the criminal process was unveiling[,]" as well as "commissions earned through accounts referred to defendant which remained with

defendant after plaintiff's criminal case was resolved and which commissions would continue so long as those accounts (accounts generated by and through [p]laintiff) remained and continued to remain defendant's 'account.'" (*Id.*) Plaintiff allegedly agreed to these terms and conditions and suspended payment of commissions due to him. (*Id.* ¶ 18.)

Plaintiff alleges that defendant has, since 2002, continued to maintain and profit from numerous accounts obtained by and through the plaintiff and referred to defendant while plaintiff was employed by defendant. (*Id.* ¶ 19.) Plaintiff lists the New York Hotel Trade Council account as an example of one such account. (*Id.*) Plaintiff notes that he still holds a retirement (401K) account with Fidelity Investments, wherein defendant lists plaintiff as an "employee." (*Id.* ¶ 20.) Plaintiff further alleges that his relationship with defendant "was and is a fiduciary one and one of trust" because defendant has "custody and access to its books and records relating to commissions it agreed to hold for plaintiff's benefit." (*Id.* ¶ 24.)

Plaintiff's criminal proceedings "concluded" in 2006. (*Id.* ¶ 21.) Defendant "has heretofore been advised" that the proceedings "resolved and concluded" in 2006. (*Id.* ¶ 22.) Although plaintiff has demanded payment from Bio Reference, defendant has failed to and refused to pay plaintiff any commissions on monies defendant received from accounts referred to it from the time of plaintiff's employment until the present. (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff filed this action against Bio Reference in Supreme Court of the State of New York, County of Nassau, in June 2011. On July 19, 2011, defendant filed a notice of removal to federal court on the grounds that the United States District Court for the Eastern District of New York has subject matter jurisdiction based on diversity jurisdiction. Plaintiff filed an Amended Complaint on August 25, 2011. Defendant filed its motion to dismiss on October 12, 2011. Plaintiff's counsel filed an Affirmation in Opposition on November 6, 2011, to which he attached an Affidavit from Nasso.[1] Defendant filed a reply on November 21, 2011. Plaintiff filed a sur-reply on December 1, 2011. On December 6, 2011, defendant filed a motion to strike Nasso's sur-reply, and addressed the arguments Nasso made in his sur-reply. The Court held oral argument on the motion on December 16, 2011 and reserved decision. On May 18, 2012, the Court conducted a telephone conference with the parties and requested supplemental briefing. On June 29, 2012, defendant filed a supplemental letter brief in further support of its motion to dismiss. On July 24, 2012, plaintiff filed a supplemental opposition, and on August 15, 2012, defendant filed a supplemental reply. The Court has fully considered the arguments and submissions of the parties.

## III. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss

[1] Plaintiff's counsel submitted to the Court a signed and notarized copy of Nasso's Affidavit in Opposition, though the electronic version on ECF is unsigned.

under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

Claims concerning fraud are subject to heightened pleading standards. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *accord Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008)). Conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public

domain on a Rule 12(b)(6) motion to dismiss).

## IV. DISCUSSION

### A. Statute of Frauds Bars Breach of Contract Claim

Defendant moves to dismiss the breach of contract claim on the grounds that it is barred by New York's Statute of Frauds (or General Obligations Law § 5-701). Plaintiff argues that: (1) the oral agreement could be performed within one year, rendering the Statute of Frauds inapplicable; (2) the Statute of Frauds does not bar plaintiff's claim because the defendant committed fraud; (3) defendant is equitably estopped from asserting the Statute of Frauds as a defense; (4) the part performance exception to the Statute of Frauds applies; and (5) the Statute of Frauds does not apply because plaintiff and defendant formed a constructive trust. For the reasons set forth below, the Court agrees with defendant and grants defendant's motion to dismiss the breach of contract claim on the grounds that it is barred by the Statute of Frauds.

#### 1. Applicable Law

The Statute of Frauds requires certain contracts, agreements, or transactions to be in writing. *See* N.Y. Gen. Oblig. Law § 5-701. The purpose of the law is to "'to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury.'" *Foster v. Kovner*, 840 N.Y.S.2d 328, 331 (N.Y. App. Div. 2007) (quoting *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 453 (1984)). An agreement that has not been reduced to writing is void if, "[b]y its terms [it] is not to be performed within one year from the making thereof." N.Y. Gen. Oblig. Law § 5-701(a)(1). It is well-established under New York law that "[a] service contract of indefinite duration, in which one party agrees to procure customers or accounts or orders on behalf of the second party, is not by its terms performable within a year – and hence must be in writing . . . – since performance is dependent, not upon the will of the parties to the contract, but upon that of a third party." *Zupan v. Blumberg*, 2 N.Y.2d 547, 550 (1957); *see Martocci v. Greater New York Brewery, Inc.*, 301 N.Y. 57, 61-62 (1950) (Statute of Frauds applied to "agreement between the parties 'whereby defendant agreed to pay plaintiff a commission of 5% on all sales of syrup made by defendant to [client]'" (quoting answer)); *Cohen v. Bartgis Bros. Co.*, 35 N.Y.S.2d 206, 207-08 (N.Y. App. Div. 1942), *aff'd* 289 N.Y. 846 (1943) ("oral contract whereby the defendant agreed to pay commissions 'upon all orders placed by [client], at any time, whether or not plaintiff was in defendant's employ at the time of the placing of such orders'" was invalid under the Statute of Frauds (quoting agreement)). Where the terms of a service contract "are such that the relationship will continue beyond a year," the Statute of Frauds applies to the contract, "even though the continuing liability to which defendant is subject is merely a contingent one." *Martocci*, 301 N.Y. at 62-63. Even though a client could cease making orders within a year, that cessation "would not constitute performance," because "plaintiff would still be in possession of his contractual right" to commissions. *Id.* at 63.

#### 2. Application

The agreement in this case is clearly governed by the Statute of Frauds. Plaintiff claims to have entered into an oral agreement for the procurement of customer

accounts that purportedly entitles him to a 10% commission every time that customer engages in business with Bio Reference. Indeed, plaintiff alleges that he is entitled to a 10% commission on *any* customer account that was referred or generated by a customer account that plaintiff originally procured. (*See* AC ¶ 13 (Bio Reference and Nasso agreed that Nasso would receive "10% of all monies defendant earned from accounts [p]laintiff referred to defendant as well as from accounts generated or referred to defendant from accounts originally referred to defendant by plaintiff.").) The contract is for an indefinite duration, as "plaintiff would receive said 10% of said monies earned by defendant *as long as those accounts and referred accounts continued to pay defendant* for the services defendant provided to them." (*Id.* ¶ 13 (emphasis added).) Thus, plaintiff's contract with Bio Reference is exactly the type of service contract of indefinite and unlimited duration to which New York courts have held that the Statute of Frauds applies. *See Martocci*, 301 N.Y. at 61-62; *Cohen*, 35 N.Y.S.2d at 207-08; *Guterman v. RGA Accessories*, 602 N.Y.S.2d 116, 117 (N.Y. App. Div. 1993) ("oral agreement under which [plaintiff] was to earn commissions not only on those particular orders placed through him but also on all orders and future orders generated by new accounts obtained through his efforts" was "not capable of performance within a year, performance being dependent not upon the will of the parties to the oral contract but upon that of third parties, and [was] thus unenforceable under the Statute of Fraud"). Plaintiff's oral contract is indefinite because its performance depends on the actions of third-parties. Under the terms of the alleged oral agreement, Bio Reference's liability remains open without any clear end date. As in *Martocci*, even though a customer could theoretically cease making orders, that cessation "would not constitute performance," because "plaintiff would still be in possession of his contractual right" to commissions. *Martocci*, 301 N.Y. at 63.

Plaintiff's arguments that the oral contract could have been performed within one year are unavailing. First, plaintiff argues that his criminal case could have been completed within one year, at which point Bio Reference would have had to pay him all of his commissions. This assertion is belied by the Amended Complaint, which clearly states that that Bio Reference was to "continue to pay plaintiff" commissions "so long as those accounts . . . remained and continued to remain defendant's 'account.'" (AC ¶ 17.) Thus, even if plaintiff were released from jail within a year, and Bio Reference began paying commissions within a year of the agreement, those commissions were to continue indefinitely thereafter. The agreement would not, therefore, have been performed within a year. Second, plaintiff argues that the oral contract could have been completed within a year because Bio Reference could have commenced the payment of plaintiff's commissions within one year. However, whether defendant could have *commenced* payment within one year is irrelevant, as the Statute of Frauds is concerned with whether an agreement can be *completed* within one year. *See* N.Y. Gen. Oblig. Law § 5-701. As discussed above, the Amended Complaint clearly states that the commissions were to continue indefinitely, and thus the agreement, by its terms, cannot be completed within one year.

B. No Defenses or Exceptions to the Statute of Frauds Apply

1. Fraud

Plaintiff argues that the Statute of Frauds does not bar his claims because defendant

allegedly committed fraud. Fraud by a party to a contract may permit a plaintiff to avoid the application of the Statute of Frauds. "[W]here a defendant makes use of the Statute of Frauds to effectuate a fraudulent purpose, under circumstances where to permit the successful reliance by a guilty defendant upon that statute would be to countenance and help in the perpetration of the fraud, equity may intervene to forbid such misuse of the statute." *Wagner v. Mfrs.' Trust Co.*, 261 N.Y.S. 136, 140 (N.Y. App. Div. 1932), *aff'd* 261 N.Y. 699 (1933). In this case, plaintiff alleges that defendant "agreed to hold plaintiff's commissions in trust until the [plaintiff's] criminal case was resolved." (Pl.'s Supplemental Opposition to the Motion to Dismiss ("Pl.'s Suppl. Opp.") at 5,[2] July 24, 2012, ECF No. 31.) Plaintiff was then "prevented from referring his accounts to other medical [p]roviders, thus preventing plaintiff from earnings commission [sic] while his criminal case was proceeding and refrained from bringing earlier legal action." (*Id.* at 5-6.) The defendant "profited by not losing any accounts and had the benefit of not paying [p]laintiff's salary or commissions and wrongfully converted plaintiff's commissions." (*Id.* at 6.)[3]

Assuming the allegations in the complaint to be true regarding Bio Reference's alleged promises, the defendant's failure to keep its promises is insufficient to constitute fraud under the exception to the Statute of Frauds doctrine. "'A mere refusal to perform an oral agreement within the Statute, however, is not such fraud as will justify a court in disregarding the statute, even though it result in hardship to the plaintiff.'" *Bulkley v. Shaw*, 289 N.Y. 133, 139 (1942) (quoting 2 Williston on Contracts § 533-A (1936))); *Sawyer v. Sickinger*, 366 N.Y.S.2d 435, 440 (N.Y. App. Div. 1975) ("[I]t is now well settled that, in the absence of any allegation of actual fraud . . . 'a mere refusal to perform an oral agreement within the Statute [of Frauds], is, generally, not such fraud as will justify a court in disregarding the Statute.'" (quoting 3 Williston on Contracts 805)). Accordingly, plaintiff's allegations are insufficient to surmount the Statute of Frauds.

2. Equitable Estoppel

Plaintiff argues that Bio Reference is precluded under the doctrine of equitable estoppel from relying on the Statute of Frauds. "Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (citations omitted). "'Estoppel' generally means that one party in a dispute should not be permitted to reap any benefit from its own misrepresentations." *United States v.*

[2] Because plaintiff did not number the pages of this document, the Court relies on the page numbers assigned by the ECF docketing system.

[3] As a threshold matter, the plaintiff has not sufficiently alleged fraud under the heightened pleading standards established by Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b); *see supra* Section III. The Amended Complaint in this case does not even mention the word "fraud," much less explain why the defendant's purported statements were fraudulent. *See, e.g.*, *Priolo Commc'ns v. MCI Telecomms. Corp.*, 699 N.Y.S.2d 376, 377 (N.Y. App. Div. 1998) ("the plaintiff's failure to specifically plead the facts underlying the alleged fraud, i.e., the material misrepresentation that the appellant never intended to fulfill its promise at the time the agreement was entered into, renders this claim fatally defective"). Nevertheless, even assuming plaintiff's allegations satisfy the Rule 9(b) pleading standards, they do not suffice to overcome the Statute of Frauds, as discussed *infra*.

*Schmitt*, 999 F. Supp. 317, 360 (E.D.N.Y. 1998), *aff'd* 28 F. App'x 63 (2d Cir. 2002). To establish a claim for equitable estoppel under New York law, a party must show: "(1) [a]n act constituting a concealment of facts or a false misrepresentation; (2) [a]n intention or expectation that such acts will be relied upon; (3) [a]ctual or constructive knowledge of the true facts by the wrongdoers; (4) [r]eliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *Gen. Elec. Capital Corp. v. Eva Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994). The burden of proof "weigh[s] heavily" on the party asserting the doctrine of equitable estoppel, "since the Statute of Frauds is not easily avoided." *Special Event Entm't v. Rockefeller Ctr., Inc.*, 458 F. Supp. 72, 77 (S.D.N.Y. 1978). Equitable estoppel is an "'extraordinary remedy.'" *Certain Underwriters at Lloyd's v. Milberg LLP*, 08 Civ. 7522 (LAP), 2009 U.S. Dist. LEXIS 97284, at *8 (S.D.N.Y. Sept. 30, 2009) (quoting *Garcia v. Peterson*, 820 N.Y.S.2d 901, 901 (N.Y. App. Div. 2006). Indeed, "[t]he purpose of invoking the doctrine is to prevent the infliction of unconscionable injury and loss upon one who has relied on the promise of another." *Am. Bartenders Sch., Inc. v. 105 Madison Co.*, 59 N.Y.2d 716, 718 (1983) (citations omitted).

Plaintiff alleges that Bio Reference offered plaintiff legal advice through its attorney, Roger Tolan ("Tolan"), in order to gain plaintiff's confidence and trust so as to persuade plaintiff to keep plaintiff's commissions with the defendant and to prevent plaintiff from referring accounts to other providers. As a result of Grodman and Tolan's representations, plaintiff allegedly did not refer his accounts to other providers and did not take legal action sooner against the defendant. Construing the facts in the light most favorable to plaintiff, defendant broke an oral promise to hold plaintiff's commissions until the conclusion of plaintiff's criminal matter, and plaintiff relied on that promise such that he did not pursue legal action and did not refer his accounts to other providers. However, "[a]n oral promise cannot be relied upon to estop a plea of Statute of Frauds unless the circumstances are 'such as to render it unconscionable to deny' the oral promise upon which the promisee has relied." *Ginsberg v. Fairfield-Noble Corp.*, 440 N.Y.S.2d 222, 224 (N.Y. App. Div. 1981) (quoting *Swerdloff v. Mobil Oil Corp.*, 427 N.Y.S.2d 266, 269 (N.Y. App. Div. 1980) (per curiam)). Defendant's alleged failure to keep its oral promise in this situation does "not rise to a level of unconscionability warranting application of equitable estoppel." *Am. Bartenders Sch., Inc.*, 59 N.Y.2d at 718; *see Swerdloff*, 427 N.Y.S.2d at 268-70 (defendants who allegedly made oral promises that plaintiff would take ownership of a dealership after years of managing it, upon which plaintiff relied such that he did not leave for alternative employment, were not equitably estopped from asserting the Statute of Frauds); *see also Ginsberg*, 440 N.Y.S.2d at 225 ("The claim of the plaintiff that promises were made to enter into a written contract in the future is commonplace in actions to enforce alleged oral employment agreements which cannot be performed within one year. If accepted under the circumstances here alleged, the statute would be rendered a nullity."); *Federation Internationale Du Sport Universitaire v. Greater Buffalo Athletic Corp.*, 93-CV-0635E(F), 1994 U.S. Dist. LEXIS 10844, at *5 (W.D.N.Y. Aug. 4, 1994) ("The courts have been reluctant to find such unconscionability. A change of job or residence in reliance on an oral promise, for instance, is in itself not a sufficiently

unconscionable injury." (citing *Swerdloff*, N.Y.S.2d at 270)); *Croce v. Hirsch*, 88 CIV. 8514 (KMW), 1991 U.S. Dist. LEXIS 7166, at *10 (S.D.N.Y. May 28, 1991) (no "unconscionable injury" where plaintiff "sold his home in Massachusetts, phased out his law practice, and moved his wife and children from Massachusetts to New York" in reliance on oral agreement). Similarly, in this case, plaintiff's decision not to pursue legal action at an earlier date and not to refer his accounts to other providers in purported reliance on Bio Reference's oral promise, is not an unconscionable injury sufficient to estop the Statute of Frauds.

3. Part Performance

Plaintiff asserts that he has partially performed the contract, thereby avoiding the Statute of Frauds through the part performance exception. The part performance doctrine "may be invoked only if plaintiff's actions can be characterized as 'unequivocally referable' to the agreement alleged." *Anostario v. Vicinanzo*, 59 N.Y.2d 662, 664 (1983); *see Esther Creative Group, LLC v Gabel*, 25 Misc. 3d 1219A (N.Y. Sup. Ct. 2009). "It is not sufficient . . . that the oral agreement gives significance to plaintiff's actions. Rather, the actions alone must be 'unintelligible or at least extraordinary', explainable only with reference to the oral agreement." *Anostario*, 59 N.Y.2d at 664 (quoting *Burns v. McCormick*, 233 N.Y. 230, 232 (1922)); *Cooper v. Schube*, 449 N.Y.S.2d 32, 35 (N.Y. App. Div. 1982), *aff'd* 57 N.Y.2d 1016 (1982)). Where "more than one potential explanation for [the alleged partial performance] is supported by the facts, the part performance exception to the statute of frauds does not apply." *Carey & Assocs. v. Ernst*, 810 N.Y.S.2d 475, 478-79 (N.Y. App. Div. 2006).

Nasso argues that his lack of action with respect to the accounts or commissions until he filed this suit demonstrates that his conduct was unequivocally referable to his agreement with Bio Reference. In other words, Nasso asserts that his decision to wait until after his criminal matter was completed to contact Bio Reference to demand the commission payments, or to take any action with respect to the customer accounts, can be explained only by referring to the alleged oral agreement. However, there could be a number of alternative explanations for Nasso's lack of action. For example, Nasso may not have been entitled to the commissions, or he may have hoped to return to work at Bio Reference after his release. Thus, because Nasso's conduct is not unequivocally referable to the alleged agreement, Nasso has failed to demonstrate part performance to avoid the Statute of Frauds.

4. Constructive Trust

Plaintiff appears to claim, as a defense to the Statute of Frauds, that Bio Reference agreed to hold his commissions in "trust."[4] Nasso has not sufficiently pled, nor could he possibly demonstrate, the necessary elements for a trust. The essential elements of a trust include "a designated beneficiary, a designated trustee, a clearly identifiable res, and delivery of the res by the settlor to the trustee with the intent of vesting legal

[4] The only reference in plaintiff's amended complaint to a trust is a single line that states, "defendant's relationship to plaintiff was and is a fiduciary one and one of trust." (AC ¶ 24.) Plaintiff subsequently suggested the issue of alleged commissions held in a constructive trust only in his supplemental submission after oral argument. Nevertheless, the Court has liberally construed the plaintiff's claim as a constructive trust claim, has fully considered it, and has found that it fails as a matter of law in this case, as discussed *infra*.

title in the trustee." *Orentreich v. Prudential Ins. Co. of Am.*, 713 N.Y.S.2d 330, 332 (N.Y. App. Div. 2000) (citation omitted). Additionally, the "creation of a trust requires that there be a clear intent." *In re Estate of Gagliardi*, 55 N.Y.2d 109, 115 (1982) (no trust created where, "reading the two documents as one, at best there is ambiguity and equivocation"). In this case, Nasso has failed to plead the elements of a trust, nor has he established that Bio Reference clearly intended to hold his commissions in trust.

Nor can plaintiff sustain a claim for a constructive trust, either as an independent claim, or as a defense to the Statute of Frauds. "A claim for a constructive trust has four elements: '(1) a confidential or fiduciary relation[ship], (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment.'" *Bloom v. Rock*, 06 Civ. 6301 (NRB), 2010 U.S. Dist. LEXIS 53995, at *32-33 (S.D.N.Y. May 27, 2010) (quoting *Sharp v. Kosmalski*, 40 N.Y.2D 119, 121 (1976)). A fiduciary relationship exists "when confidence is reposed on one side and there is resulting superiority and influence on the other." *Argent Elec., Inc. v. Cooper Lighting, Inc.*, No. 03 Civ. 9794 (RMB), 2005 U.S. Dist. LEXIS 18689, at *26 (S.D.N.Y. Aug. 31, 2005) (quoting *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991)). "'A fiduciary relationship involves discretionary authority and dependency,' and is marked by 'reliance, and de facto control and dominance.' Relationships that are inherently fiduciary in nature include those 'between attorney and client, executor and heir, guardian and ward, principal and agent, trustee and trust beneficiary, and senior corporate official and shareholder.'" *Id.* at *27 (quoting *Chestman*, 947 F.2d at 568-69.).

Here, plaintiff has alleged that he sold his ownership of Bio Dynamics, as well as all Bio Dynamics accounts, in return for 40,000 of 400,000 shares of Bio Reference stock and a position as a salesperson for Bio Reference. (Pl.'s Affidavit in Opposition ("Pl.s Aff."), Nov. 4, 2011, ECF No. 14.) Plaintiff was a sophisticated businessman with "extensive experience in the pharmaceutical business" and a medical degree. (*Id.*) After plaintiff was indicted, he sold his 40,000 shares "for a small sum of money" on Tolan's advice. (*Id.*) Construing these allegations as true, plaintiff cannot allege the existence of a fiduciary relationship with Bio Reference. *See, e.g.*, *United States v. Cassese*, 273 F. Supp. 2d 481, 486 (S.D.N.Y. 2003) (relationship between "competitors engaged in negotiations for a possible business combination involving their respective companies" was "very far from a relationship marked by 'de facto control' and 'dominance' or entailing 'discretionary authority and dependency.'" (quoting *Chestman*, 947 F.2d at 568-69)).

As an initial matter, an employer owes no fiduciary duty to its at-will employee. *See Bloom*, 2010 U.S. Dist. LEXIS 53995, at *31-32 ("the plaintiff's argument that the defendants 'occupied a position of trust' in relation to him is legally untenable because an employee's 'trust' that his employer will 'treat him fairly' does not create a fiduciary duty on the part of the employer" (quoting *Freedman v. Pearlman*, 706 N.Y.S.2d 405, 409 (N.Y. App. Div. 2000)); *Budet v. Tiffany & Co.*, 547 N.Y.S.2d 81, 82 (N.Y. App. Div. 1989) ("an employer owes an employee at will no fiduciary duty"); *Ingle v. Glamore Motor Sales, Inc.*, 528 N.Y.S.2d 602, 604 (N.Y. App. Div. 1988) ("[t]he parties were not fiduciaries since the plaintiff's employment was terminable at

will"), *aff'd* 73 N.Y.2d 183 (1989). Additionally, any fiduciary duty defendant potentially owed plaintiff on the basis of his stock ownership in Bio Reference would not have applied to the alleged oral agreement concerning plaintiff's employment that is at issue in this case. *See Moore v. F.A. Inv. Holdings, Ltd.*, 3:10cv891(VLB), 2012 U.S. Dist. LEXIS 28521, at *29 (D. Conn. Mar. 5, 2012) ("'a shareholder of a closely held corporation who is also an employee cannot recover for breach of fiduciary duty where the claim is essentially an employment dispute'" (quoting *Wall Street Sys., Inc. v. Lemence*, 04 Civ. 5229(JSR), 2005 U.S. Dist. LEXIS 19147, at *23 (S.D.N.Y. Sept. 2, 2005))); *Riblet Prods. Corp. v. Nagy*, 683 A.2d 37, 37 (Del. 1996) ("although majority stockholders have fiduciary duties to minority stockholders *qua* stockholders, those duties are not implicated when the issue involves the rights of the minority stockholder *qua* employee under an employment contract").[5]

Nor can plaintiff establish that he and Bio Reference were in a confidential relationship. New York courts rarely find the existence of a confidential relationship where the parties are not related or married, and in the rare instances where courts have found such a confidential relationship, the parties were generally engaged in a romantic relationship characterized by a substantial disparity in knowledge or power between the parties. *See Sharp*, 40 N.Y.2d at 120-21 (defendant and plaintiff were involved in a "very close relationship" and there was a "disparity in education between the plaintiff and defendant" that "highlight[ed] the degree of dependence of the plaintiff upon the trust and honor of the defendant"); *Muller v. Sobol*, 97 N.Y.S.2d 905, 906 (N.Y. App. Div. 1950) ("parties lived as man and wife from 1925 up to the time of the purchase of the subject property and the making of the agreement in question in 1945, and thereafter until shortly before the commencement of this action in 1947"). Plaintiff, a sophisticated businessman with a medical degree, cannot allege the existence of such a confidential relationship on the basis of his employer-employee relationship with Bio Reference. (*See* Pl.'s Aff.)

Furthermore, plaintiff has not shown that Bio Reference was unjustly enriched in these circumstances. Construing all allegations as true, Bio Reference made a promise to hold plaintiff's commissions until the resolution of plaintiff's criminal case, and to continue paying plaintiff those commissions indefinitely. When, nine years later, plaintiff demanded his commissions, Bio Reference denied the existence of such an agreement. Such an alleged breach of contract in these circumstances does not warrant the imposition of a constructive trust on the basis that it is "necessary to satisfy the demands of justice." *See Golden Budha Corp. v. Canadian Land Co., N.V.*, 931 F.2d 196, 202 (2d Cir. 1991) (quoting *Latham v. Father Divine*, 299 N.Y. 22, 27 (1949)). Plaintiff has not shown that defendant, by allegedly breaking an oral promise to indefinitely pay plaintiff commissions once plaintiff's criminal case concluded, held "property 'under such circumstances that in equity and good conscience he ought not to

[5] Because Bio Reference is incorporated in New Jersey, this Court looks to New Jersey law "in adjudicating a corporation's 'internal affairs,' including questions as to the relationship between the corporation's shareholders and its directors." *Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980) (citations omitted). However, New Jersey law is clear that an employer owes its employee no fiduciary duty. *See Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 444 (D.N.J. 2011). Simply because that employee is also a shareholder does not give rise to a fiduciary duty when the dispute concerns wages.

[have] retain[ed] it.'" *Id.* (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978) ("Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched. . . . What is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it.'") (internal citations omitted)).

Thus, because the plaintiff has not established a fiduciary or confidential relationship, and has not shown unjust enrichment, he cannot assert that a constructive trust should be imposed. *See Bloom*, 2010 U.S. Dist. LEXIS 53995, at *32-33 ("The plaintiff's claim [for a constructive trust] necessarily fails both because there has been no unjust enrichment and because the plaintiff has not provided a basis for finding the existence of either a confidential or fiduciary relationship."). Accordingly, plaintiff's claim that the Statute of Frauds does not apply because he was a party to a trust or a constructive trust with Bio Reference must fail. Additionally, to the extent plaintiff is asserting a separate claim for the creation of a constructive trust, that claim also fails for the reasons discussed *supra*.

C. Accounting Claim

Plaintiff also brings an action for an accounting. "Under New York law, the elements of a claim for an equitable action for an accounting are: (1) a relationship of a fiduciary or confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) the absence of an adequate legal remedy; and (4), in some cases, a demand for an accounting and a refusal." *Matsumura v. Benihana Nat'l Corp.*, 06 Civ. 7609 (NRB), 2007 U.S. Dist. LEXIS 37376, at *12-13 (S.D.N.Y. May 21, 2007). As discussed *supra*, plaintiff cannot demonstrate the existence of a fiduciary or confidential relationship with defendant. The claim for an accounting must fail on these grounds alone. *See Bloom v. Rock*, 2010 U.S. Dist. LEXIS 53995, at *32 ("A plaintiff must demonstrate either a fiduciary or a confidential relationship with a defendant to sustain an equitable action for accounting.") (citing *Argent Elec., Inc.*, 2005 U.S. Dist. LEXIS 18689, at *25-26). Thus, plaintiff's claim for an accounting is dismissed.

D. Conversion Claim

Plaintiff asserts a claim for conversion against Bio Reference. "Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995) (quoting *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105 (1927); *Indus. & Gen. Trust v. Tod*, 170 N.Y. 233, 245 (1902)); *Sing. Tong Teik PTE, Ltd. v. Coppola*, 04-CV-3440 (FB) (RLM), 2007 U.S. Dist. LEXIS 60240, at *9 (E.D.N.Y. Aug. 17, 2007) ("To establish a cause of action in conversion under New York law, a plaintiff must show 'legal ownership or an immediate superior right of possession to a specific identifiable thing' and 'that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" (quoting *Independence Discount Corp. v. Bressner*, 365 N.Y.S.2d 44, 46 (N.Y. App. Div. 1975))).

Plaintiff's conversion claim must fail because it merely recasts his breach of contract claim. "'A claim to recover

damages for conversion cannot be predicated on a mere breach of contract.'" *Sing. Tong Teik PTE, Ltd.*, 2007 U.S. Dist. LEXIS 60240, at *9 (quoting *Priolo Comm'cns*, 699 N.Y.S.2d at 377); *see MBL Life Assurance Corp. v. 555 Realty Co.*, 658 N.Y.S.2d 122, 124 (N.Y. App. Div. 1997) ("It is settled, however, that a claim of conversion cannot be predicated on a mere breach of contract. Because the plaintiff failed to submit evidence demonstrating a wrong independent from the contract claim, the defendants are entitled to dismissal of the third cause of action to recover damages for conversion." (citations omitted)). Plaintiff alleges no independent or additional wrong aside from defendant's failure to adhere to the alleged oral agreement concerning the commissions. Accordingly, plaintiff's claim for conversion merely recasts his breach of contract claim, and is therefore dismissed.[6]

V. LEAVE TO REPLEAD

Although plaintiff has not requested leave to replead his amended complaint, the Court has considered whether plaintiff should be given an opportunity to replead his claims. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") As discussed in detail *supra*, the contract is clearly barred by the Statute of Frauds, and none of the defenses or exceptions to the Statute of Frauds apply. Plaintiff's claim for an accounting fails because he cannot allege the existence of a fiduciary or confidential relationship for the reasons discussed *supra*. Additionally, the conversion claim merely recasts the breach of contract claim, and is barred by the statute of limitations. Thus, any attempt to replead any of these claims would be futile.

Furthermore, plaintiff has been given ample opportunity to allege a claim and has failed to do so. Plaintiff has already amended the complaint once, and has submitted an affidavit in opposition that the Court considered in connection with plaintiff's amended complaint, and he has still failed to allege a plausible claim against

[6] Additionally, plaintiff's claim for conversion fails because it was not brought within the requisite three-year statute of limitations period. *See* N.Y. C.P.L.R. § 214(3); *Vigilant Ins. Co. of Am.*, 87 N.Y.2d at 44. Construing the allegations as true, in January 2008, when plaintiff finished his probation term, he called "Grodman and Tolan at Bio Reference and again was told that neither was available to speak with me. I left messages requesting that either man call me back regarding commissions due me as well as requesting the status of all ongoing accounts that I had referred to Bio Reference up to 2002. This was repeated on several occasions with no call back from either man." (Pl.'s Aff.) Plaintiff filed this suit on April 22, 2011 – more than three years after he completed his probation term and contacted Grodman and Tolan regarding his commissions, and therefore beyond the requisite limitations period. Furthermore, defendant is not equitably estopped from asserting the statute of limitations. "The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006). A plaintiff may assert equitable estoppel "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Id.* at 674 (quotations omitted). Plaintiff has not asserted in his complaint, amended complaint, or affidavit in opposition that defendant perpetrated any fraud, misrepresentations, or deception that would explain plaintiff's failure to file the complaint within three years of calling Bio Reference in January 2008.

the defendant. Under these circumstances, the Court declines to grant plaintiff yet another opportunity to replead. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim" (citing *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead."))). Accordingly, leave to replead is denied.

## VI. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss the complaint in its entirety, with prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

______________________

JOSEPH F. BIANCO
United States District Judge

Dated: September 24, 2012
Central Islip, New York

* * *

Plaintiff is represented by John C. DiGiovanna, John C. DiGiovanna & Associates, 20 Pondview, Saint James, NY 11780. Defendant is represented by Ivan R. Novich, Littler Mendelson, 1 Newark Center 8th Floor, Newark, NJ 07102.